UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
UNITED STATES OF AMERICA

      -against-

                                            **NOTICE OF MOTION**

RIGOBERTO VELASCO                 07 CR 275 (LAP)

                                            BES 7906

      Defendant.

------------------------------------------------X
S I R S:

      PLEASE TAKE NOTICE that upon the annexed affirmation of BARRY E. SCHULMAN, ESQ., attorney of record for defendant, RIGOBERTO VELASCO, the affidavit of the defendant RIGOBERTO VELASCO, the documents in the court file; independent investigation; and the files maintained in the Law Offices of Barry E. Schulman, the undersigned will move this court before the Honorable Loretta Preska, United States District Judge for the Southern District of New York, at the Courthouse located at 500 Pearl Street, New York, New York, on June 4, 2008, for an Order granting the following relief:

        I.    Suppression of evidence as a result of illegal arrest;

        II.   Suppression of evidence as a result of failure to comply with the requirements of Title III;

        III.  Suppression of Statements;

IV. Suppression of Photographic Identification evidence

V. Suppression of Voice Identification evidence;

VI. Identity of Witnesses;

VII. Discovery;

VIII. Brady and Giglio Material;

IX. Federal Rules of Evidence 404(b) Notice;

X. The Prosecution should be compelled to identify which sections of tapes and documents it will utilize in its case-in-chief;

XI. The defendant should be permitted to make additional pre-trial motions if warranted by continuing discovery or further development; and for such other and further relief as the Court may deem just and proper.

Dated:   Brooklyn, New York
         May 14, 2008

                                    Yours, etc.,

                                    *Barry E. Schulman*
                                    BARRY E. SCHULMAN, ESQ.
                                    ATTORNEY FOR DEFENDANT
                                    RIGOBERTO VELASCO
                                    16 COURT STREET
                                    SUITE 2901
                                    BROOKLYN, NY 11241
                                    (718) 855-8855

TO:   HONORABLE LORETTA A. PRESKA
      UNITED STATES DISTRICT JUDGE
      SOUTHERN DISTRICT OF NEW YORK
      500 PEARL STREET
      NEW YORK, NY 10007


      REED M. BRODSKY, ESQ,
      ASSISTANT UNITED STATES ATTORNEY
      SOUTHERN DISTRICT OF NEW YORK
      ONE ST. ANDREWS PLAZA
      NEW YORK, NY 10007

      CLERK OF THE COURT
      SOUTHERN DISTRICT OF NEW YORK
      500 PEARL STREET
      NEW YORK, NY 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

UNITED STATES OF AMERICA,

          -against-

RIGOBERTO VELASCO,

               Defendant.

------------------------------------------------X

**AFFIRMATION**

07 CR 275 (LAP)

BES 7906

STATE OF NEW YORK )
                       SS:
COUNTY OF KINGS )

       BARRY E. SCHULMAN, ESQ., deposes and says:

       1.    That I am the attorney for the defendant, RIGOBERTO VELASCO and make this Affirmation in support of the defendant's Omnibus Motion.

       2.    The foregoing Motion and this Affirmation rely on discovery provided by the prosecution to date and other investigation. The following Summary of Facts will describe the events which, it is submitted, support the relief requested in the instant motion. This Summary of Facts is based on extensive investigation by counsel, including conversations with prosecutors, examination of numerous court documents and other investigation. It is also believed much of the further discovery and response to the motions will greatly clarify and support defendant's positions.

## BACKGROUND OF
## RIGOBERTO VELASCO

3. Rigoberto Velasco is 41 years old and has lived in the United States for 21 years. He is a long-term permanent resident. One of his sons was born here in the United States, and is a citizen, and his daughter is a permanent resident who has applied for citizenship. Mr. Velasco has lived with his common-law wife, Maria Soto, and their children for 19 years. He has also lived with and supported Ms. Soto's older son. Mr. Velasco has been in the construction business since he first arrived in the United States, and he has consistently filed income taxes.

4. It should be noted that Mr. Velasco's entire family, including his brothers, sisters, cousins, uncle and his mother are either citizens or permanent residents. His father was a permanent resident before he passed away.

## SUMMARY OF FACTS IN SUPPORT OF
## DEFENDANT RIGOBERTO VELASCO'S MOTIONS

5. The motions in this case focus heavily on the arrest of Rigoberto Velasco by New York State authorities on March 28, 2007. It is submitted that critical evidence leading to defendant Rigoberto Velasco's arrest in the instant case flowed from the initial illegal arrest of the defendant in a New York State case.

6. The indictment in the instant case charges a drug conspiracy and related counts, from 2001 through on or about August 15, 2005. The gravamen of this case appears to be a drug mill managed by Roland Valentin

2

and others. The investigation was conducted by New York City police officers working in conjunction with a Drug Enforcement Agency ("DEA") Strike Force Unit.

7. The police had been conducting a surveillance of a location at 31-66 Fenton Avenue, Bronx, New York. On August 15, 2005, the officers entered the Fenton Avenue location and found drugs, currency and other evidence. It does not appear that Rigoberto Velasco's name or identity was identified at the time of those arrests as being related to Fenton Avenue. Rather, at best the prosecution some time later, sought an individual known as "Flaco" as a supplier of drugs to the mill. It should be noted that "Flaco" (meaning skinny or thin) is one of the most common nicknames in the Spanish culture.

8. In late 2006 through March of 2007, in an apparently unrelated investigation, the New York City police started electronic eavesdropping of, among others, an individual who was referred to as "Flaco". Neither that eavesdropping order or the supporting papers have been provided to counsel, nor has any notice of intent to use the fruits of said warrant been given to defendant Rigoberto Velasco. It appears that as a result of that eavesdropping warrant, the New York City police sought to investigate Rigoberto Velasco.

9. On March 28, 2007, the New York City police detained Rigoberto Velasco. As detailed in Rigoberto Velasco's affidavit (attached as Exhibit A), the police, without a warrant, forcibly stopped a car driven by his stepson with Mr. Velasco and Maria Soto as passengers. There was no basis given for the stop, and Rigoberto Velasco was then handcuffed and driven by police to a street corner. After an hour, a police officer or an interpreter arrived, spoke with

3

Rigoberto Velasco, and apparently indicated that he believed that Rigoberto Velasco's voice was that of "Flaco" from their electronic surveillance.

10. Based on the discovery provided to date, it appears that federal authorities began to attempt to identify Rigoberto Velasco as "Flaco" in their investigation. A witness wrote "Flacko" underneath his photograph in a photographic array on April 6, 2007, and another witness wrote "Flaco" on a copy of the photographic array on the same date. An individual large picture of Rigoberto Velasco, from the photographic array apparently was also displayed. A notation on the photograph stated, "looks more like Flaco 4/6/07 9:20 A.M." As will be discussed *infra*, the photo spread is highly flawed, and there appears to be repeated viewings of the same photograph of the defendant by witnesses. (See Exhibit B)

## I. SUPPRESSION OF EVIDENCE AS A RESULT OF ILLEGAL ARREST

11. As detailed in the supporting affidavit of Rigoberto Velasco (Exhibit A) and the summary of facts, it appears that the identification of Rigoberto Velasco as the co-conspirator "Flaco" was the product of an arrest made without a warrant or indictment. The officers appeared not to have probable cause, until hours after the seizure and arrest for the state case. It appears that shortly thereafter, relying on the fruits of that illegal arrest, an arrest by federal officials was made of the defendant Rigoberto Velasco.

12. The state arrest was made on March 28, 2007 and was followed shortly thereafter by the federal arrest on April 10, 2007. The discovery

4

suggests no identification was made of defendant Rigoberto Velasco in the federal case until April 6, 2007. New York City police officers were involved in each jurisdiction, making it highly unlikely that these investigations were unrelated and unknown to each other.

13. The identification of Rigoberto Velasco as "Flaco" arises from an initial arrest lacking probable cause, both as to a voice identification and a photographic array. Those identifications and any fruits of the arrest, including photographs, materials seized from the defendant's house and car as well as other evidence the prosecution may wish to offer should be suppressed.

## II. SUPPRESSION OF EVIDENCE AS A RESULT OF FAILURE TO COMPLY WITH THE REQUIREMENTS OF TITLE III

14. To date, the prosecution has neither provided notice of electronic interception nor the supporting paperwork that led to defendant's arrest. As discussed *supra*, it appears that it was that electronic surveillance which led to the arrest in this case.

15. Title III requires that to use such electronic surveillance and its fruits, notification and supporting affidavits must be provided. Since that has not been done in the instant case, the fruits thereof must be suppressed.

## III. SUPPRESSION OF STATEMENTS

16. Although a Miranda sheet has been provided, to date no statements have been detailed to have been made by defendant Rigoberto Velasco.

5

Therefore, the prosecution should be precluded from producing any such statements at a later time.

## IV. SUPPRESSION OF PHOTOGRAPHS

17. The prosecution has submitted two identical photographic arrays with defendant's photograph at #5, and an enlarged photograph of the defendant, which appears to have been used to identify Rigoberto Velasco by witnesses (Exhibit B).

18. Initially, we note that the identification is a fruit of the initial illegal arrest (see Points I and II). Moreover, the photo array is objected to as being highly suggestive of defendant's picture as the person to identify. The head shot of Rigoberto Velasco is the largest of any of the photos of the heads in the array. Rigoberto Velasco is the only one in the array who has a goatee, a mustache, or any facial hair. The defendant's photo stands out as brighter and clearer than the rest, and is set in the middle of the array. The photograph of Rigoberto Velasco is distinct because of its size, clarity and brightness. The top three photos of the array contain men who have clearly receded hairlines (which Rigoberto Velasco does not). All the other photographs in the array are of men darker than Rigoberto Velasco, with curlier hair. Further, the conclusion of the large blowup photo of Rigoberto Velasco with the language on the back would suggest a second showing of the same photograph to witnesses, which is inherently suggestive.

19. It is therefore requested that a hearing be held or in the alternative, that the identifications be suppressed.

## V. SUPPRESSION OF VOICE IDENTIFICATION EVIDENCE

20. Counsel has been informed by the prosecutors for the Manhattan District Attorney's Office that a "voice comparison" was made of defendant Rigoberto Velasco after his arrest on March 28, 2007, at Grand Central Parkway and Union Turnpike. As detailed in the Summary of Facts and the affidavit of Rigoberto Velasco (Exhibit A), this "voice comparison" was made after Rigoberto Velasco was seized and handcuffed at another location earlier. It appears that it was not until that "voice comparison" that defendant Rigoberto Velasco was arrested.

21. It is believed, based on the fact that federal authorities took no action in the form of an indictment or complaint against Rigoberto Velasco from 2005, until he was arrested on March 28, 2007 by the New York City Police Department, that the identification of Rigoberto Velasco as "Flaco" in their 2005 case, arise from the New York City Police Department's initial illegal arrest.

22. The defendant, Rigoberto Velasco, moves therefore to suppress that "voice comparison" and all the fruits which were the product of the initial illegal arrest.

## VII. IDENTITY OF WITNESSES AND OPPORTUNITY TO INTERVIEW

23. In the instant case, it appears that the evidence against Rigoberto Velasco will initially be of alleged accomplice witnesses. These witnesses were the keystone to all the transactions and orchestrated all of them. As such, the witnesses are critical witnesses that counsel must interview. In order to prepare a defense, counsel needs a history of the cases that these witnesses participated in; sufficient identifying information to investigate their background; any inducements they have received or been promised, and opportunities to interview these central witnesses.

24. Accordingly, defendant, RIGOBERTO VELASCO requests that the Court order the prosecution to provide the defendant with the name and address of the witnesses the prosecution intends to call and a list of all persons who can otherwise shed light on this matter. Such disclosure is essential to counsel's preparation for trial and the request is made pursuant to the authority of United States v. Saa, 859 F.2d 1067 (2d Cir. 1988), and United States v. Cannone, 528 F.2d 295 (2d Cir. 1976).

25. In United States v. Saa, the United States Court of Appeals for the Second Circuit decided the district court's failure to order the prosecution to disclose the identity of an informant whose testimony was material to the defense was error. The informant in Saa was a critical witness who was necessary to the defense to explain contradicting stories of two investigating agents regarding a co-defendant's presence at a meeting. Quoting Roviaro v.

8

United States, 353, U.S. 53 (1957), the Court noted in finding the district court erred:

> "[w]here the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the [informant's] privilege must give way."

Saa, 859 F.2d at 1073.

26. The prosecution's witnesses were critical in the investigation of this case, and have direct knowledge of the alleged transactions charged. Accordingly, it is requested that the prosecution disclose at this time the names and addresses of any prosecution witnesses. The defense also specifically requests the opportunity to ask the witnesses directly, *in camera* if necessary, for an interview to prepare for trial. *See,* Saa 859 F.2d at 1074, 1075. It is suggested this procedure will safeguard against any danger against the informants' safety.

27. Additionally, although there is not a shred of evidence to believe that such disclosure would jeopardize the witnesses, the prosecution should, of course be given time, if it wishes to permit the witnesses to enter the United States Marshal's Witness Protection Program.

## VIII. DISCOVERY

28. It is requested that the prosecution provide a detailed list of the discovery provided, and that which it will still provide. Further, the defense

9

wishes to examine all physical evidence seized from the defendant, or intended to be produced at trial, and transcripts of consensually recorded conversations, agents' debriefing notes regarding witnesses and co-defendants, whether indicted or not, and all documents or exhibits as soon as possible. The following inventory is provided in addition to our previous requests to assist the prosecution in reviewing the discovery demands. This list is not final, but rather :

1)  Final transcripts of the alleged recorded conversations, especially those had with any of the witnesses;

2)  All debriefing notes and reports regarding cooperating witnesses;

3)  Criminal histories of the witnesses; and the compensation or other form of reward agreed to for assistance in the instant investigation, as well as any other investigations;

4)  Copies of any documentary evidence the prosecution intends to introduce during trial;

5)  The cell phone records of any mobile phones used in the case, and which the prosecution intends to rely upon;

6)  Notice of any experts who will testify along with their reports, backgrounds and compensation.

### IX. BRADY AND GIGLIO MATERIAL

29. Although the prosecution has agreed to comply with its obligation under Brady v. Maryland, 373 U.S. 150 (1963), and Giglio v. United States, 405 U.S. 150 (1972), it has not disclosed any material pursuant to those obligations at this time. In the instant case, defendant RIGOBERTO VELASCO was

unknown to the investigating agents, and the critical evidence against RIGOBERTO VELASCO will be from co-conspirator witnesses. Clearly, all background about these witnesses, notes regarding other investigations, debriefing notes of these witnesses must be turned over now.

### X. FEDERAL RULES OF EVIDENCE 404 (b) NOTICE

30. In the instant case, the prosecution has not yet served notice of its intention to admit similar act evidence pursuant to Fed.R.Evid. 404(b). It is important for the defense to know the prosecution's position regarding similar acts evidence the prosecution will seek to introduce. Defendant, RIGOBERTO VELASCO, moves this court for an Order directing the prosecution to give pre-trial notice of its intention to introduce evidence at trial of additional crimes, wrongs or acts not enumerated in the indictment or by previous correspondence with counsel.

### XI. THE PROSECUTION SHOULD BE COMPELLED TO IDENTIFY WHICH SECTIONS OF TAPES AND DOCUMENTS IT WILL UTILIZE IN ITS CASE-IN-CHIEF

31. Counsel moves for an order compelling the prosecution to produce a list of all sections of tapes and documents intended for use by the prosecution as evidence in chief at the trial. The rule in this Circuit requires not only production of all such physical evidence the prosecution" intends to offer, or to use or to refer to in connection with the testimony of any witness, on its case in chief," United States v. Turkish, 458 F. Supp. 874, 882 (S.D.N.Y. 1978), but also to identify what it will submit in its case-in-chief.

32. In <u>United States v. Turkish</u>, the district court held that the prosecution could not claim to have fulfilled its production obligations under Rule 16 merely by making available to the defendant all of the approximately 25,000 documents in the prosecution's possession and, thus, "bury[ing] the defendant[s] in paper." <u>Id</u>. Instead, the court required the prosecution to identify for the defendant which of those documents were to be used in its case-in-chief, either by being offered in evidence or by being "relied on or referred to in any way" by prosecution witnesses. <u>Id</u>.

33. Similarly, in <u>United States v. Bortnovskvy</u>, 820 F.2d 572 (2d Cir. 1987) (*per curiam*), the Second Circuit reversed RICO and mail fraud convictions based on allegedly false burglary and fire loss insurance claims because, among other errors, the district court declined to compel the prosecution to specify which documents that were made available in discovery would be proven to have been falsified. <u>Id</u>. at 574-75. As the appellate court put it, "[t]he Prosecution did not fulfill its obligation merely be providing mounts of documents to defense counsel who were left unguided..." <u>Id</u>. at 575.

34. Although, to be sure, the prosecution had already made many documents and vouchers available this resulted in the production without any real guidance as to which, if any, of those items would, in fact, be used against a particular defendant. The law is clear that the prosecution should not be permitted to claim compliance with its discovery obligations by providing "mountains of discovery" to defense counsel who are "left unguided" as to which of the items they should focus on. <u>United States v. Bortnovskvy</u>, *supra*, 820 F.2d at 575.

12

35. Here, it is requested that the prosecution identify which audiotapes of recorded conversations, if any, the prosecution intends to introduce, as well as the corresponding transcripts of those audiotapes, and any documents seized from defendant, RIGOBERTO VELASCO, or elsewhere that the prosecution intends to offer at trial for any evidentiary purpose.

### XII. THE DEFENDANT SHOULD BE PERMITTED TO MAKE ADDITIONAL PRE-TRIAL MOTIONS IF WARRANTED BY CONTINUING DISCOVERY OR FURTHER DEVELOPMENT

36. Defendant, RIGOBERTO VELASCO, by and through his undersigned counsel, moves this court for an order allowing him to submit supplemental motions, should continuing discovery or response to defense motions disclose additional grounds or facts not heretofore revealed. Specifically, counsel requests to supplement his motions should continuing discovery or response to these motions indicate that additional motions are necessary.

WHEREFORE, it is respectfully requested that the relief sought in these motions be granted, or in the alternative a hearing be ordered to resolve any factual issues.

I declare under the penalty of perjury the foregoing is true and correct.

Dated:   Brooklyn, New York
         May 14, 2008

_Barry E. Schulman_
BARRY E. SCHULMAN
ATTORNEY FOR DEFENDANT
RIGOBERTO VELASCO
16 COURT STREET
BROOKLYN, NY 11241
(718) 855-8855